**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ALAN HINTON, ) | CASE NO. 4:12-cv-1063 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| TRINITY HIGHWAY PRODUCTS, LLC, ) | |
| ) | **MEMORANDUM OF OPINION** |
| Defendant. ) | Docs. No. 38, 49 |

Before the court is the motion of defendant, Trinity Highway Products, LLC ("Trinity"), for summary judgment. Doc. No. 38. Plaintiff, Alan Hinton ("Hinton"), opposes Trinity's motion. Doc. No. 45. Also before the court is the motion of Hinton for sanctions. Doc. No. 49. Trinity opposes Hinton's motion. Doc. No. 52. For the reasons given below, the court **GRANTS** defendant's motion, **DENIES** plaintiff's motion, and dismisses the complaint with prejudice.

I.

With respect to Trinity's motion for summary judgment, the court views the facts, as it must, in the light most favorable to Hinton, the party opposing the motion for summary judgment.

Trinity employed Hinton beginning about August 2, 1993. Hinton's employment at Trinity was governed by a collective bargaining agreement ("Agreement") between Trinity and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-

Industrial and Service Workers International Union, Local 4960 ("the union").  *See* Deposition of Hinton ("Deposition"), Defendant's motion, Exh. A, pp. 51, 97; Agreement, Exh. 2 to Declaration of Peggy Davis ("Davis Declaration"), Defendant's motion, Exh. B.  The Agreement established a four-step process for resolving grievances:  (1) meetings with the employee's supervisor, then plant superintendent and plant manager; (2) a written grievance submitted to the plant manager; (3) a meeting between the international representative of the union and executives of the company; and (4) impartial arbitration.  Agreement at 26-32.  Hinton also understood that under Trinity's work rules, insubordination was grounds for discharge.  Deposition at 41, 46.

Hinton had a history of disciplinary actions prior to January 2012.  On March 22, 2000, he received a written warning and a three-day suspension fighting or attempting to injure another employee.  Deposition at 52-53 and Employee Written Warning Notice, March 22, 2000, Deposition, Exh. 4.  He received a written warning for unsatisfactory work performance on July 2, 2010 and received a written warning for carelessness on August 17, 2010.  Deposition at 55-56, 57; Employee Written Warning Notice, July 2, 2010, Deposition, Exh. 5; Employee Written Warning Notice, August 17, 2010, Deposition, Exh. 6. On March 18, 2011, he received a written warning and one-day suspension for calling a co-worker a "f___ing faggot" and for insubordination.  Deposition at 59-60 and Deposition Exh. 7.  On July 19, 2011, he was warned about leaving his work area without authorization.  Deposition at 65-66 and Employee Awareness For, July 19, 2011, Deposition Exh. 8.

In January 2012, Hinton was working at Trinity as a kettle helper.  A kettle helper assists in galvanizing objects in a 42-foot long kettle filled with molten zinc.  The

kettle helper is required to clean the kettle by skimming and raking impurities from the zinc and is required to sweep the area around the kettle to recover any stray zinc.

On January 25, 2012, Hinton's supervisor, Larry Clay ("Clay"), told Hinton to clean the kettle at the beginning of Hinton's shift at about 3:15 p.m.  Deposition at 72.  Hinton, upset that the kettle helper on the previous shift, Bobby Jenkins ("Jenkins"), had left the kettle dirty, responded, "F___ Bobby Jenkins; I'll leave him the way he left me."  *Id.* at 72-73.  Sometime after this response, Hinton obeyed Clay and cleaned the kettle.  *Id.* at 73.

Hinton's shift was scheduled to end at midnight.  Toward the end of his shift, just before 11:30 p.m., Hinton cleaned the kettle again, but after scraping zinc from the top of the kettle, he deliberately left the scraped zinc in the kettle for Jenkins to remove when Jenkins started his shift.  *Id.* at 73-75.  At 11:30, Clay saw that the kettle was dirty and that Hinton was not in the kettle area.  Declaration of Clay ("Clay Declaration"), Defendant's Motion, Exh. C, p. 2.  Clay found Hinton in the lunchroom with his safety equipment removed and told Hinton to clean the kettle before the end of his shift.  *Id.*  At about midnight, Clay inspected the kettle, saw that it was dirty, and learned that Hinton had left for the day.  *Id.*  Clay reported to his supervisor, Ted Messer ("Messer"), that Hinton had refused to clean the kettle as instructed.  *Id.*

Upon Clay's report, Messer watched a surveillance video of the kettle which was time and date stamped "11:00 p.m. to 12:00 a.m." from January 25-26, 2012 ("the video"). Declaration of Messer ("Messer Declaration"), Defendant's Motion, Exh. D, p. 2.  The video showed that Hinton did not clean the kettle between 11:30 p.m. and midnight on January 25-26, 2012.  *Id.*

3

Messer consulted with Peggy Davis ("Davis"), the Human Resources Manager, and Jerry Bennett ("Bennett"), the Plant Manager. *Id.* On the basis of Clay's report and the video, Messer and Bennett fired Hinton for insubordination. *Id.*

Hinton filed a grievance over his dismissal. Deposition at 33. According to Hinton, when Clay ordered him to sweep the kettle down, he went to the kettle to obey but found that the kettle had already been cleaned. Deposition at 74. He also contended that the video on which Messer and Bennett relied in firing him was from January 24, 2012, not January 25, 2012. *Id.*

Trinity showed the video to the union. In addition, because Hinton challenged the date of the video, Trinity asked the company that installed and maintained Trinity's surveillance system, YPS Integrated Systems ("YPS"), to inspect the video system and the video. Declaration of Davis ("David Declaration"), Defendant's Motion, Exh. B, p. 3; Letter of Lester T. Zatko to Dan Moore, March 19, 2012 ("Letter"), Davis Declaration, Exh. 3; E-mail chain between Daniel Moore and Lester Zatko, March 20-21, 2012 ("e-mails"), Davis Declaration, Exh. 4; and Messer Declaration at 3. YPS concluded that the surveillance system was working properly and that it properly recorded the time and date. Letter and Messer Declaration at 3. Trinity also received a certification from DigiMerge, the manufacturer of the video surveillance system, that if the surveillance video displayed a date and time, that date and time had not been altered. E-Mails and Messer Declaration at 3.

Trinity offered Hinton a last chance agreement to avoid termination, and the union recommended that Hinton accept it. Deposition at 97-99. Hinton declined. Deposition at 98-99. The union did not seek arbitration. Davis Declaration at 4. Hinton

4

was, therefore, terminated.

Hinton filed the present action in state court on March 26, 2012, and Trinity, relying upon diversity jurisdiction, removed the case to federal court on April 30, 2012. Hinton asserts a single cause of action in his complaint, that Trinity discharged him because of his age in violation of Ohio Rev. Code Ch. 4112.  Trinity denies Hinton's allegation.  On March 13, 2013, Trinity filed the instant motion for summary judgment, and Hinton opposes Trinity's motion.

II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves," *id.*, or by any other evidentiary material admissible at trial, *Horta v. Sullivan*, 4 F.3d 2, 8 (1st

5

Cir. 1993).  *See also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966).  In addition, the Court "does not weigh the evidence or make credibility determinations."  *Id*.  This includes taking the non-moving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant.  *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251. Where a nonmovant relies "merely on allegations," the court may not accept those allegations as fact. *Chappell*, 585 F.3d at 906.

III.

Hinton alleges that Trinity discharged him because of his age in violation of Ohio Rev. Code Ch. 4112. Ohio Rev Code § 4112.02 ("§ 4112.02") provides in relevant part as follows:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of the . . . age . . . of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.14(B) ("§ 4114.14(B)") provides a cause of action to enforce the provisions of § 4112.02.

Under Ohio law, there is a statutory condition precedent to invoking the cause of action at § 4114.14(B):

> (C) The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.

Ohio Rev. Code § 41124.14(C) ("§ 4114.14(C)"). An employee has an opportunity to arbitrate if a collective bargaining agreement provides for arbitration and the decision to arbitrate is vested in the employee's union. *See Cramton v. Siemens Energy &*

7

*Automation, Inc.*, 2009 WL 2524689, at *4 (S.D. Ohio Aug. 17, 2009). To avoid abuses of that authority by the union, an employee who believes that a union unfairly decided not to arbitrate his discrimination claim may nevertheless assert a cause of action pursuant to § 4114.14(B) by bringing the cause of action against both the employer and the union. *Sutterlin v. Mansfield Plumbing Products, Inc.*, 2001 WL 310633, at *1 (Ohio App. March 26, 2001). In such a case, the employee must prevail over both the employer and the union. *Id.* In the cause of action against the union, the employee must demonstrate a breach of duty by the union. *Id.*

In the present case, Hinton had an opportunity to arbitrate his dispute with Trinity, and his union declined to arbitrate. If Hinton believed that this decision was a breach of the union's duty to represent him, then he could have asserted his age discrimination action pursuant to § 4114.14(B) against both Trinity and the union. Hinton did not, however, assert such an action against the union. He is barred by § 4114.14(C), therefore, from asserting such a cause of action against Trinity. For this reason, Hinton's cause of action must be dismissed.

But even if Hinton were not barred from asserting his cause of action, he would be unable to prevail on the merits on the record before the court. "In analyzing claims arising under Ohio Rev Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the Age Discrimination in Employment act ("ADEA"). *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 469 (2002) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981), and *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276 (1996)). A plaintiff may

prove discrimination because of age by direct or circumstantial evidence. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177-78 (2009).

In the present case, Hinton does not present any direct evidence of age discrimination. Thus, if he is to establish a *prima facie* case of age discrimination and avoid summary judgment, he must do so by circumstantial evidence.

A plaintiff seeking to prove discrimination by circumstantial evidence must use the burden-shifting framework of *McDonnel Douglas Corp. v. Green,* 411 U.S. 792 (1973), to establish a *prima facie* case of discrimination. This framework requires a plaintiff to demonstrate the following: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was either replaced by a person outside the protected class or treated differently than similarly-situated individuals. *Policastro v. Northwest Airlines, Inc.* 297 F.3d 535, 538–39 (6th Cir. 2002).

If plaintiff succeeds in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its action. *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010). The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a mere pretext for intentional age discrimination. *Id.* Ultimately, however, plaintiff must demonstrate "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross,* 557 U.S. at 177–78. It is not enough to demonstrate that age was a factor in the defendant's decision. Plaintiff must demonstrate that without the factor of age, the unfavorable action would not have been taken.

9

Hinton does not meet his burden in demonstrating a *prima facie* case of age discrimination by circumstantial evidence, nor does the record support such a position. Hinton meets only three of the four factors necessary to establish a *prima facie* case. The evidence of record demonstrates (1) that Hinton was at least 40 years old at the time of the alleged discrimination and (2) that he was subjected to an adverse employment action.  Moreover, defendant does not argue that Hinton was unqualified for his position as kettle helper.  Hinton does not, however, either assert or demonstrate that he was replaced by a person outside the protected class or treated differently than similarly-situated individuals.

Even if this court assumes that Hinton did establish a *prima facie* case of age discrimination, Trinity articulates a nondiscriminatory reason for terminating Hinton, *i.e.*, Hinton's insubordination.  Trinity also advances evidence tending to support insubordination as a legitimate reason for its decision, and Hinton offers no evidence that the reason was pretextual.  In particular, Hinton offers no evidence to support his belief that the date and time stamped on the video were incorrect.

Not only does Hinton fail to produce any evidence that Trinity's nondiscriminatory reason for terminating him was pretextual, Hinton conceded in his deposition that age was *not* a but-for cause of his termination:

> Q. But there was nothing you felt during your employment, other than getting discharged, that was discrimination on the basis of age?
>
> A. Well, it wasn't nothing about age, it was about -- it had something to do with it and the money I was making and all the overtime I was working.  That had a lot to do with it.
>
> Q. But what I'm saying is the only facts that you have to support that is your belief that age had something to do with it.  There's nothing anybody said --

10

> A. Like I say, you know, I think age had a little something to do with it and whatnot. Like I said, because of my job, I had one of the easiest jobs in the plant.
>
> Q. You had an easy job that paid a lot and people wanted that job and they wanted --
>
> A. There you go.
>
> Q. I just want to make sure that I got it straight.
>
> A. There you go. You know what I was saying all along.
>
> Q. If I could testify --
>
> A. Come on.
>
> Q. So you believe that you were discharged because you had a job that everybody else wanted.
>
> A. A lot of people wanted my job.
>
> Q. Your job paid well and wasn't that hard.
>
> A. Right.
>
> Q. And so people wanted that job, and the company could save money by getting rid of you?
>
> A. That's one the reasons why [sic].
>
> Q. And so age was just because of seniority, you had seniority --
>
> A. Right.
>
> Q. So it wasn't age, it was seniority?
>
> A. Yes.

Deposition at 107-08.

Hinton's own testimony, therefore, rebuts any allegation that Trinity discriminated against him on the basis of age. Morover, as Trinity points out, seniority

and age are conceptually distinct in Title VII and ADEA analyses, and seniority may not be used as a proxy for age in finding liability pursuant to Title VII and the ADEA. *See the discussion in Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608-13 (1993). Hinton's concession and allegation that Trinity discharged him because of his seniority, rather than his age, is fatal to his claim pursuant to § 4114.14(B), as it precludes finding that age was a "but-for" cause of his dismissal. Thus, the record does not support Hinton's claim of age discrimination.

For the reasons given above, the court grants Trinity's motion for summary judgment.

IV.

Hinton's motion for sanctions alleges that Trinity ignored the court's order to provide him with the videotape of Hinton's January 25, 2012 shift, showing the kettle area from 3 p.m. through midnight. According to Hinton, the videotape offered to him showed only the kettle area from 11 p.m. through midnight on that date. Hinton concludes that because Trinity violated the court's order, it should be sanctioned.[1]

On March 28, 2013, the court issued an order in response to Hinton's request to lift the protective order in place in this case and to compel defendant to provide the shift videotape showing the kettle area from January 25, 2012. The court's order said in relevant part as follows:

> Within seven days from the date of the entry of this order, defendant shall contact Hinton and inform him of whether the January 25, 2012 surveillance

---

[1] The nature of the requested sanction is difficult to determine. Hinton requests "that defendant action be dismissed with prejudice . . . ." Plaintiff's motion. As Hinton filed this action, his request is puzzling.

12

> video covers the entire period of time, between 3 p.m. and midnight, depicting Hinton's workstation or inform defendant of the period of time the surveillance video depicts. Defendant shall make a copy of the January 25, 2012 surveillance video in VHS or DVD format compatible for viewing on a television. Defendant shall then contact Hinton and arrange for a time for Hinton to come to the offices of defendant's attorney and view the surveillance video on a television screen. Hinton shall go to the offices of defendant's attorney at the appointed time and view the prepared surveillance video. If the video plays properly, defendant shall then provide that copy to Hinton and Hinton shall sign a receipt stating that he received the surveillance video and that it played properly when he viewed it in the offices of defendant's counsel. Defense counsel shall retain the original receipt and also provide a copy of the receipt to Hinton. If defense counsel does not have the means to permit Hinton to view the video in his office, defense counsel shall contact the court's deputy and arrange for the showing of the video in chambers.

Order, March 28, 2013, p. 2. Doc. No. 43.

Hinton and Trinity's counsel arranged for Hinton to view the videotape from January 25, 2012 at counsel's office. Hinton alleges the following: "Plaintiff was led to believe by Atty Gerak that [the] video was complete, [but] upon arrival to the law office Atty Billington stated that the video for 1-25-12 was only from 11 p.m. to 12 a.m." Plaintiff's motion (spelling and punctuation altered from the original). This allegation is conclusory. Hinton fails to describe his conversation with attorney Gerak. Hinton then viewed the videotape. According to Hinton, the videotape was out of his sight for ten to fifteen minutes. When he was handed a videotape and asked to sign for it, Hinton refused on the ground that he could not be sure that it was the same videotape that he had just viewed, since it had been out of his sight. Plaintiff's Response, Doc. No. 50, p. 1.

Pursuant to Federal Rule of Civil Procedure 16(f) ("Rule 16(f)"), the court may require a party that fails to obey a scheduling or pretrial order to "pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's

13

fees, unless the judge finds that the noncompliance was substantially justified . . . ." Rule 16(f) also allows the Court to make any just order provided for in Federal Rule of Civil Procedure 37(b)(2)(B), (C) or (D), including precluding a disobedient party from proffering evidence on a certain issue or claim or rendering default judgment against the disobedient party.

Hinton fails to demonstrate that Trinity violated the court's order. The court did not order Trinity to give Hinton a videotape of the entire shift from 3 p.m. to midnight. Rather, it ordered Trinity to provide Hinton a copy of *what it had*. Hinton does not demonstrate that Trinity had a videotape more extensive than the one it showed him at the office of its counsel. As Hinton fails to demonstrate that Trinity disobeyed the court's order, sanctions against Trinity are not warranted.[2]

As Hinton fails to demonstrate that Trinity violated the court's order, the court denies Hinton's motion for sanctions.

V.

Hinton fails to demonstrate that Trinity disobeyed the court's order. For this reason, the court **DENIES** Hinton's motion for sanctions. Hinton's claim of age

---

[2] Moreover, with respect to the substance of this case, the time from 3 p.m. to 11 p.m. in the area of the kettle on January 25, 2012 is irrelevant. The only relevant period is from 11:30 p.m. to midnight, during which time Clay found the kettle dirty, told Hinton to clean it, and was obeyed or not obeyed before the end of Hinton's shift at midnight. Trinity showed Hinton a tape of the portion of Hinton's January 25, 2012 shift that is relevant to his case and offered him a videotape that it represented to be a copy of the videotape it had shown him. Hinton could easily have aksed that Trinity's counsel again allow him to view a portion of the videotape it offered him to ensure that it was the videotape he had seen before either signing or refusing to sign for the videotape or signed a receipt after noting that the video had been out of his sight for fifteen minutes. Hinton does not allege that he did this.

discrimination is barred by § 4114.14(C) because he had the opportunity to arbitrate the discharge.  Alternatively, viewing the evidence in the light most favorable to Hinton, Trinity is entitled to judgment.  For these reasons, the court **GRANTS** Trinity's motion for summary judgment and dismisses Hinton's complaint with prejudice.

**IT IS SO ORDERED.**


Date: May 8, 2013                              s/ *Nancy A. Vecchiarelli*
                                               U.S. MAGISTRATE JUDGE